Gregory S. Sullivan
BOZEMAN CITY ATTORNEY
P.O. Box 1230
Bozeman, MT 59771-1230
Tel: (406) 582-2309
Fax: (406) 582-2302
gsullivan@bozeman.net

Attorney for the City of Bozeman, Montana

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES & NATIVE ECOSYSTEM COUNCIL, <br> Plaintiffs, <br><br> vs. <br><br> FAYE KRUEGER, Regional Forester of Region One Of the Forest Service, UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE, UNITED STATES FISH AND WILDLIFE SERVICE, an Agency of the US Department of The Interior, <br> Defendants | Case No.: CV-12-55-M-DLC <br><br> **BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* CITY OF BOZEMAN, MONTANA** |

The City of Bozeman, Montana submits this Brief in Support of Unopposed Motion for Leave to File Brief of *Amicus Curiae*. The City of Bozeman, Montana ("City") is a self-governing Charter based municipality formed under the laws of the State of Montana. One of the most critical services the City provides to its residents, businesses, and civic institutions is the provision of adequate and safe potable water. Through this brief the City (i) will demonstrate its interest in ensuring the Bozeman Municipal Watershed Fuels Reduction Project ("BMW Project") moves forward; and, (ii) will address the contention made by the Plaintiffs through the Declaration of Steve Kelly that improvements the City is currently making to the Sourdough Water Treatment Plant ("SWTP") nullify the need for the BWM Project.

### I.     Standards for Granting *Amicus Curiae* Status.

The City requests the Court exercise is discretion and grant the City *amicus curiae* status. The extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court. *Waste Management of Pennsylvania v. City of New York*, 162 F.R.D. 34, 36 (D.Crt. District of PA) (May 30, 1995) (citing *Pennsylvania Environmental Defense Foundation v. Bellefonte Borough*, 718 F.Supp. 431, 434 (M.D.Pa.1989); *United States v. Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y.1991); *Leigh v. Engle*,

535 F.Supp. 418, 420 (N.D.Ill.1982)). In addition, a court may grant leave to appear as an *amicus* if the information offered is "timely and useful." *Id.* (citing *Yip v. Pagano,* 606 F.Supp. 1566, 1568 (D.N.J.1985), *aff'd mem.,* 782 F.2d 1033 (3rd Cir.), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986)).

An *amicus,* of course, is not a party to the litigation and participates only to assist the court. Nevertheless, "by the nature of things an *amicus* is not normally impartial." *Gotti,* 755 F.Supp. at 1158, *quoting Strasser v. Doorley,* 432 F.2d 567 (1st Cir.1970). While the partiality of an *amicus* is a factor to consider in deciding whether to allow participation, "there is no rule ... that amici must be totally disinterested." *Concerned Area Residents for the Environment v. Southview Farm,* 834 F.Supp. 1410, 1413 (W.D.N.Y.1993), *quoting, Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982).

A bright line test between an *amicus* and a named party was articulated in *Wyatt by and through Rawlins v. Hanan,* 868 F.Supp. 1356, 1358 (M.D.Ala.1994). The Federal District Court found that the bright line centered around control of the litigation. "The named parties should always remain in control, with the amicus merely responding to the issues presented by the parties. An amicus cannot initiate, create, extend, or enlarge issues. Further, an amicus has no right to appeal or dismiss issues." *Id.* at 1358–1359. The court further stated:

> The court believes that the concept of amicus curiae is flexible and that, as long as the amicus does not intrude on the rights of the parties, it can have a range of roles: from a passive one of providing information to a more active participatory one. In other words, although *amici* should not assume control of the litigation, they can take an active role in some cases beyond providing information. E.g., *Hoptowit v. Ray, supra.*

*Id.* at 1359.

## II. The City has a special interest in this litigation.

The City's interest in this litigation is founded on two basic concepts: first, the City is uniquely positioned to provide information directly to the Court regarding the importance of the Sourdough Creek and Hyalite Creek watersheds in the City's provision of potable water to the City's residents, institutions, and businesses for the purposes of consumption and fire protection. The City believes active management of these watersheds in compliance with federal law, including the Healthy Forest Restoration Act (16 U.S.C. § 6501(1)), to reduce the impact of wildfire on the City's sources of potable water is critical to ensuring the health, safety, and general welfare of the community.

Second, since Plaintiffs assert the City's upgrades to the SWTP nullify the need for the BMW Project, the City believes it is uniquely positioned to provide information directly to the Court regarding the steps the City has taken in designing and constructing improvements to the SWTP and, importantly, the very

real limitations of the SWTP to handle wildfire related contamination from ash deposits and sediment due to increased erosion in wildfire areas.

### a. The City has a responsibility to provide potable water for consumption and firefighting to over 39,000 residents, institutions such as hospitals and schools, and thousands of businesses.

The City believes its interest in the BWM Project is demonstrated by the simple fact that the Sourdough Creek and Hyalite Creek watersheds provide at least 80% of the source water for the City. BMW-0000006; BMW-0019160.

The City's interest in the BMW Project is grounded in the obvious concept that because the City has taken on the responsibility to provide water for consumption and fire protection to its residents, businesses, and institutions, the City has a legal duty to take necessary and reasonable steps to ensure the water it provides is both adequate in volume and safe. *See, e.g.*, Mont. Code Ann. § 7-13-4402 (2011) ("The city or town council has power to adopt, enter into, and carry out means for securing a supply of water for the use of a city or town or its inhabitants"); Mont. Code Ann. § 7-13-4406(1)(c) ("(1) Cities and towns have jurisdiction and control: (c) over the source of streams from which water is taken

for the enforcement of its sanitary ordinances, the abatement of nuisances, and the general preservation of the purity of its water supply"); and Mont. Code Ann. § 75-6-101 ("It is the public policy of this state to protect, maintain, and improve the quality and potability of water for public water supplies and domestic uses.")

Moreover, the Safe Drinking Water Act (42 U.S.C. § 300f *et seq.*), as enforced by the State of Montana, places strict standards on the quality of potable water. Mont. Code Ann. § 75-6-101 *et seq.*

The City believes that because it is the primary trustee of the City's water sources the above statutes and the contracts it has in place with users requires it to work with the Defendants to protect the ability of these watersheds to provide source water adequate and suitable for treatment. The City and Defendants have done so by taking the reasonable and necessary step of approving a Memorandum of Understanding with the Defendants for management of these watersheds. BMW-0001602; BMW-0001700.

The City also believes that other factors related to the SWTP indicate its interests in this litigation are special. These include: the fact that the City owns approximately 4000 acres scattered throughout ten sections of land within the Sourdough Creek watershed (BMW-0021829) which will be managed in conjunction with the BWM Project (BMW-0021834); its need to accommodate the

significant population growth in the City throughout the 2000s and which will certainly occur again; the importance of reliable clean source of potable water to a vibrant economy; the critical nature of water for fighting structural fires such as the natural gas explosion that occurred in Bozeman in March of 2009.

### b. While it is clear the City is in the process of making significant investments in upgrades to the SWTP, the improvements do not "nullify" the need for the BMW Project.

Plaintiffs assert through the Declaration of Steve Kelly that "the risk of harm to the Defendants and the City is low" as there is "new information that would lend even less credibility to the defendants' argument." Decl. of Steve Kelly, Pl.'s Mot. for S.J., Ex. 2, ¶ 9. The Plaintiff's rely solely upon a newspaper item that alleges to have quoted the SWTP's Superintendant regarding the ability of the SWTP to handle sediment from a wildfire. The City will demonstrate through an *amicus* brief the fallacy of the proposition that the City would rely solely on the BMW Project to address increased sediment loads coming into the SWTP due to wildfire. *See* BMW-0000025.

Undeniably, the BWM Project is critical to protecting the City's primary source of portable water; but it is also clear the City has taken costly and critical steps on its own to mitigate the impacts of wildfire on the potable water source

through the design, financing, and construction of improvements at the SWTP. The City simply seeks the ability to demonstrate through an *amicus* brief the fallacy of the Plaintiff's argument that the risk of harm to the City from not moving forward with the BMW Project is low.

### III. An amicus brief is relevant to the outcome of the litigation.

While the City believes the Court will benefit from the information mentioned above, the City does not presume to determine whether the Court would find that information desirable.

The City certainly believes, however, that the information is relevant to the outcome of the litigation. First, as discussed above, the Plaintiffs have brought to the Court's attention the City's efforts to improve the SWTP under the flawed proposition the City's improvements demonstrate the BMW Project is no longer necessary as the City could somehow fully treat the worst case scenario of polluted runoff without any impacts to the SWTP or problem in providing adequate and safe water. For that matter alone, the City's participation is relevant.

Second, the underlying basis for the BMW Project is critical to a determination of this Court as to whether the Defendants have taken a sufficient "hard look" at the relevant factors under the National Environmental Policy Act (42 U.S.C. § 4331, *et seq.*) ("NEPA") given the importance Congress placed on

protecting municipal watersheds from wildfire under Section 2 of the Healthy Forests Restoration Act ("HFRA"), 16 U.S.C. § 6501(1). The City will discuss the HFRA and how through the NEPA process the HFRA mandates the Defendants seriously consider the need to actively manage vegetation to avoid large scale wildfire in municipal watersheds.

## IV. Neither party can adequately demonstrate the critical nature of the BMW project to the health, safety, and general welfare of the citizens of the City.

Neither the Plaintiffs nor the Defendants can adequately address the City's responsibility to provide potable water to its residents, institutions, and businesses for consumption and firefighting simply because none of the parties are actually in the business of collecting, treating, and distributing potable water for consumption and firefighting on a daily basis to tens of thousands of residents, dozens of critical civic institutions, and thousands of businesses. In addition, none of the parties have current information regarding the City's design and engineering parameters for the improvements currently being made to the SWTP. While the Defendants clearly understand the importance of managing the Hyalite and Sourdough watersheds to the ability of the City to provide adequate and safe potable water, the City believes

it is the *primary* responsible party for the City's potable water supply and thus uniquely positioned to assist the Court in this litigation.

Finally, the Plaintiffs are clearly not in the position to adequately demonstrate the critical nature of the BMW Project on the City's potable water supply as evident through its Brief in Support of Motion for Summary Judgment. The Plaintiffs ignore the importance of these watersheds as the City's main source of water. Instead, through Mr. Kelly's Declaration, the Plaintiffs make light of the City's efforts to address the consequences to its water supply from wildfire. The City believes the Court may benefit from the City's perspective.

### V. Conclusion.

The City's interest in being granted *amicus* status is simply to provide information directly to the Court regarding the importance of the BWM Project to the City. If the Court grants leave to the City to file a brief the City will not create new issues, will not intrude on the rights of the parties, nor will the City seek to control the litigation. As has been shown above, the City believes it has a special interest in the litigation and the information it has is relevant to the Court's review.

If granted leave, the City requests to file its brief on the grounds stated herein and any other grounds imposed by the Court no later than December 7, 2012.

Submitted the 9th day of November, 2012

_____
Gregory S. Sullivan
Bozeman City Attorney

## Certificate of Service

I hereby certify that on November 9, 2012, I mailed an original of the foregoing to the Federal District Court in Missoula, Montana. A copy of the foregoing was also mailed via the United State Postal Service to counsel listed below at their respective addresses:

Heather Bienvenue, Legal Assistant

DANA M. JOHNSON
Northern Rockies Justice Center, PLLC
P.O. Box 9623
Moscow, ID 83843

REBECCA K. SMITH
Public Interest Defense Center, P.C.
317 East Spruce Street
P.O. Box 7584
Missoula, MT 59807

MICHAEL COTTER
United States Attorney
MARK STEGER SMITH
Assistant US Attorney
US ATTORNEY'S OFFICE
PO Box 1478
Billings, MT 59103

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
PAUL D. BARKER, JR.
Senior Attorney
Natural Resources Section
P.O. Box 7611

Washington, DC 20044-7611

JOHN H. MARTIN
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202