IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and NATIVE ECOSYSTEMS COUNCIL,<br><br>Plaintiffs,<br><br>vs.<br><br>FAYE KRUEGER, Regional Forester for Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE; and UNITED STATES FISH AND WILDLIFE SERVICE;<br><br>Defendants. | CV 12–55–M–DLC<br><br>ORDER |

Before the Court is Defendants' motion to alter or amend the judgment in this case pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Defendants contend that amendment of the Court's Order and Judgment is necessary to correct clear errors of law and prevent manifest injustice. For the reasons explained below, the motion is denied.

As the parties are familiar with the factual and procedural background of this case, the facts will only be reiterated here as necessary to explain the Court's decision. Defendants assert that reconsideration is warranted for three basic reasons. Each will be addressed in turn.

1

## I. Rule 59(e) Standard

Amendment of a judgment pursuant to Rule 59(e) is proper where "the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 n.1 (9th Cir. 2005). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000). Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)(internal quotes and citation omitted).

## II. The Burden-Shifting Framework

Defendants assert that the Court's use of a burden-shifting framework for assessing a request for injunctive relief was clear error. Defendants assert that *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) forecloses application of the Court's burden-shifting framework in this Endangered Species Act ("ESA") case, because, they assert, it inappropriately relieved Plaintiffs of showing a likelihood of irreparable harm. The Court disagrees.

First, Defendants point to no controlling authority that directly addresses

how a plaintiff seeking injunctive relief in an ESA case meets the burden of showing a likelihood of irreparable harm. The Court's burden-shifting framework resolves tension in Ninth Circuit case law about how a plaintiff in an ESA case must proceed in order to show a likelihood of irreparable harm. *Compare Washington Toxics Coalition v. Environmental Protection Agency*, 413 F.3d 1024, 1035 (9th Cir. 2005)(holding that a violation of the ESA results in a rebuttable presumption of irreparable harm) *with National Wildlife Federation v. Burlington Northern Rail Road*, 23 F.3d 1508, 1511 (9th Cir. 1994)(holding that plaintiff bears burden at the outset to show irreparable harm is "at least likely").

Under the burden-shifting framework, a plaintiff seeking an injunction in an ESA case must carry some of the burden at the outset: he must allege an ESA violation and a likelihood of *specific* irreparable harm flowing from that violation. The burden then shifts to the defendants to rebut this allegation by showing that the agency action will not jeopardize the species or destroy or adversely modify critical habitat. If the defendants rebut the allegation, the burden then shifts back to the plaintiff to come forward with evidence, contrary to the agency's evidence, that the action will harm a species or its critical habitat. Thus, under the Court's burden-shifting framework a showing of a "likelihood of irreparable harm" is required before an injunction will issue.

3

In this case, Plaintiffs met their initial burden by alleging (1) an ESA violation stemming from Defendants failure to reinitiate consultation after the designation of lynx critical habitat, and (2) that, as a result of this ESA violation, the specific proposed projects were likely to irreparably harm thousands of acres of lynx critical habitat. Defendants admitted that they failed to reinitiate consultation following designation of lynx critical habitat, and the Court determined that this constituted a violation of the ESA. Second, Defendants admitted that the proposed projects would adversely affect thousands of acres of lynx critical habitat, but Defendants concluded that irreparable harm was unlikely. The Court determined, however, that this conclusion was fatally flawed because it was heavily reliant on, and tiered to, the Lynx Amendment, which was adopted before designation of lynx critical habitat. Defendants, therefore, failed to rebut Plaintiffs' showing of a likelihood of irreparable harm flowing from Defendants' ESA violation.

This approach is not inconsistent with *Winter*, nor any of the Ninth Circuit cases Defendants cite to the Court. *Winter* requires a plaintiff to establish that he is likely to suffer irreparable harm in the absence of a preliminary injunction. *How* the plaintiff establishes a likelihood of irreparable harm in an ESA case is a different matter. The Court's burden-shifting framework, therefore, is not

inconsistent with *Winter*. It is also not inconsistent with *Conservation Congress v. United States Forest Service*, 720 F.3d 1048 (9th Cir. 2013). *Conservation Congress* did not address how a "likelihood of irreparable harm" must be shown in an ESA case. In *Conservation Congress*, the Court never reached the irreparable harm prong of the analysis, because the plaintiff failed to show a likelihood of success on the merits of its ESA claim. *Conservation Congress*, 729 F.3d at 1054.

Defendants cite to no controlling law that conflicts with the Court's burden-shifting framework for assessing a plaintiff's claim for injunctive relief in an Endangered Species Act case. Accordingly, Defendants fail to show any clear error in the Court's Order with respect to the burden-shifting framework.

### III. The Project Level Biological Opinions and NEPA Analyses

Defendants assert that the Court clearly erred by holding that the Biological Opinions and NEPA analysis were deficient. Defendants assert that the Biological Opinions and NEPA analysis would be upheld if they were analyzed under the deferential "arbitrary and capricious" standard. The Court disagrees.

As the Court has already determined, viewing the Biological Opinions and NEPA documents as a whole, these documents are deficient and fatally flawed because they "'failed to consider an important aspect of the problem.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (quoting *Motor Vehicle*

5

*Mfrs. Assn., Inc. v. St. Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1989)). Both the Biological Opinions and NEPA documents failed to consider the affect that the designation of lynx critical habitat had on their analysis. Furthermore, these documents were inextricably intertwined with and could not be separated from their reliance on the flawed Lynx Amendment. As a result, the conclusions reached in them lack a "reasonably thorough discussion of the significant aspects of the probable environmental consequences" of the proposed action. *Or. Envtl. Council v. Kunzman*, 817 F.2d 484, 492 (9th Cir. 1987).

Accordingly, there was no clear error in the Court's determination that the Biological Opinions and NEPA analyses were deficient.

### IV. Consideration of the Public Interest

Defendants contend that the Court clearly erred by enjoining the projects without sufficient consideration of the public interest. Defendants contend that the public's interest in these logging and fuels reduction projects outweighs the public's interest in protecting an endangered species from likely irreparable harm. The Court disagrees.

"Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194

(1978). "Congress has decided that under the ESA, the balance of hardships always tips sharply in favor of the endangered or threatened species." *Wash. Toxics Coal.*, 413 F.3d at 1035. The Court's approach to balancing the equities in this case is consistent with these mandates: "In ESA cases, courts do not have equitable discretion to balance the parties' competing interests. The equitable scales are always tipped in favor of the endangered or threatened species." (Doc. 39 at 6)(citing *National Wildlife Federation*, 23 F.3d at 1510, *National Wildlife Federation v. National Marine Fisheries Service.*, 422 F.3d 782, 793 (9th Cir. 2005), *TVA*, 437 U.S. at 194). Defendants invite the Court to disregard these clear Ninth Circuit and Supreme Court holdings by asserting that *Winter* mandates a different result. Again, *Winter* is not an Endangered Species Act case, and it does not overrule *Tennessee Valley Authority v. Hill*.

In this case, the Court found a violation of the Endangered Species Act and a resulting likelihood of irreparable harm to lynx critical habitat. Congress has already balanced the equities in this situation and the equities tip sharply in favor of protecting the endangered species. Accordingly, there is no clear error in the Court's Order with respect to balancing the equities.

IT IS ORDERED that Defendant's motion to alter or amend the judgment is DENIED.

DATED this 30th day of November, 2013.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court